# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MICHAEL MERRILL, GREGORY
WEBER, JEFFREY CARPENTER,
and UNITED STEEL, PAPER AND
FORESTRY, RUBBER, MANUFACTURING,
ENERGY, ALLIED INDUSTRIAL AND
SERVICE WORKERS INTERNATIONAL
UNION, AFL-CIO/CLC,**
        **Plaintiffs,**

      v.                                                                     Case No. 10C0700

**BRIGGS & STRATTON CORPORATION,
GROUP INSURANCE PLAN OF BRIGGS
& STRATTON CORPORATION, and DOES 1
THROUGH 20,**
        **Defendants.**

---

## DECISION AND ORDER

Plaintiffs Michael Merrill, Gregory Weber and Jeffrey Carpenter retired as employees of defendant Briggs & Stratton Corporation ("Briggs") before 8/1/06. They and the union representing Briggs employees ("the union") bring this putative class action under § 301 of the Labor Management Relations Act ("LMRA") and § 502(a) of the Employee Retirement Income Security Act ("ERISA") alleging that Briggs violated the parties' collective bargaining agreement ("CBA") by reducing the health benefits of certain employees who retired before 8/1/06. Plaintiffs also name as a defendant Briggs's Group Insurance Plan ("the Plan"). Before me now is defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs allege that the union and Briggs negotiated a series of CBAs which required Briggs to provide health benefits to retired employees. Plaintiffs further allege that the CBA in effect between August 1, 2006 and July 31, 2010 (hereafter "the 2006 CBA") provided that Briggs would pay the premiums for medical, dental and vision benefits for ten years but not beyond age 65 for certain pre 8/1/06 retirees, but that when the CBA expired Briggs ceased paying this level of benefits.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. I assume that all of plaintiffs' allegations are true and draw all reasonable inferences from them in plaintiffs' favor. The complaint must contain sufficient factual matter to state a plausible claim. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. In considering defendants' motion, I consider both the allegations in the complaint and the exhibits attached thereto. Rosenblum v. Travelbyus.com Ltd., 299 F.3d 657, 661 (7th Cir. 2002); Fed. R. Civ. P. 10(c). I may also consider documents referred to but not attached to the complaint, if they are central to plaintiffs' claim and their authenticity is not contested. Hecker v. Deere & Co., 556 F.3d 575, 582 (7th Cir. 2009); Wright v. Assoc. Ins. Cos., Inc., 29 F.3d 1244, 1248 (7th Cir. 1994). In the present case, defendants submit a number of documents which they ask me to consider. I will consider the 2006 CBA because part of it is attached to the complaint, it is referred to in the complaint and it is central to plaintiffs' claim. I will also consider the summary plan descriptions ("SPDs") because the exhibits attached to the complaint refer to them (see

Compl., Ex. 5 at 1, 3,) the CBAs refer to them, they are central to plaintiffs' claim and plaintiffs do not dispute their authenticity.

Generally, an employer may adopt, modify, or terminate a plan providing health benefits at any time. Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995). Employers of course may cede this freedom through collective bargaining. UAW v. Rockford Powertrain, Inc., 350 F.3d 698, 702-703 (7th Cir. 2003). Thus, determining whether Briggs properly reduced the benefits at issue presents a question of contract interpretation, specifically interpretation of the language of the 2006 CBA. In interpreting the contract, I give contract terms their ordinary and popular meaning and treat them as they would be understood by a person of average experience and intelligence. Bland v. Fiatallis North America, Inc., 401 F.3d 779, 783 (7th Cir. 2005).

Generally speaking, because benefits once vested become forever unalterable and because employers are not legally required to vest benefits, the intention to vest must be found in "clear and express language." Id. at 784. In Rossetto v. Pabst Brewing Co., 217 F.3d 539, 547 (7th Cir. 2000), the Seventh Circuit provided additional guidance on how to analyze the language of a CBA relating to the vesting of benefits:

> 1. If a collective bargaining agreement is completely silent on the duration of health benefits, the entitlement to them expires with the agreement, as a matter of law (that is, without going beyond the pleadings), unless the plaintiff can show by objective evidence that the agreement is latently ambiguous . . .
>
> 2. If the agreement makes clear that the entitlement expires with the agreement, as by including such a phrase as "during the term of this agreement," then, once again, the plaintiff loses as a matter of law unless he can show a latent ambiguity by means of objective evidence. . . .

>3. If there is language in the agreement to suggest a grant of lifetime benefits, and the suggestion is not negated by the agreement read as a whole, the plaintiff is entitled to a trial . . .

In addition, a provision that might appear to be ambiguous in isolation may be disambiguated by other language in the agreement. Id. at 545.

Section 6(a) of Article XIII of the CBA limits Briggs's obligation to provide benefits to "the term of this agreement," stating that:

> The benefits provided for in the existing Group Insurance Plans, as amended by this agreement, will be maintained during the term of this agreement.

This provision is clear and unambiguous. Thus, unless plaintiffs can point to a latent ambiguity in the CBA by means of objective evidence, plaintiffs' contention that their benefits vested must fail. Rossetto, 217 F.3d at 547; see also, Cherry v. Auburn Gear, Inc., 44 F.3d 476, 482-84 (7th Cir. 2006). A latent ambiguity is one that arises not from the language of the document but "from a collateral matter when the document's terms are applied or executed." Id. at 484 (quoting BLACK'S LAW DICTIONARY 88 (8th ed. 2004)).

Plaintiffs do not argue that there is a latent ambiguity but rather contend that the CBA is patently ambiguous, i.e. that it is ambiguous on its face. They argue that Section 8 of Article XIV creates the ambiguity. They rely on the following language:

> (a) Employees with a seniority date of 12-31-79 or prior, who retire after 30 years of service, shall be eligible for full Company paid premiums for medical, dental and vision benefits for up to ten (10) years, but not beyond age 65. For any balance of time between the 10 year maximum and age 65, Company contributions will be limited to the extent as provided for active employees.
>
> . . .

> (c) Employees with more than 10 but less than 30 years of service, who retire by reason of permanent and total disability, are eligible for Company paid medical benefits until age 65.
>
> . . .
>
> (e) For employees who retire on or after 8-1-06, coverages offered in (a), (b), and (c) above shall be the same coverage(s) offered active employees and are subject to change if different insurance plans are negotiated for active employees.

(Def.'s App., TAB 8 at 68-83.)

Plaintiffs argue that because under Section 8(e) the benefits of retirees "who retire on or after 8/1/06 . . . are subject to change if different insurance plans are negotiated for active employees," it follows that the benefits of pre 8/1/06 retirees are not subject to change. In other words, plaintiffs contend that we can infer from the combination of the § 8(a) language that certain retirees "shall be eligible for full company paid premiums . . . for up to ten (10) years . . ." and the § 8(e) language that the benefits of post 8/1/06 retirees are subject to change that the benefits of the pre 8/1/06 retirees described in § 8(a) are vested. At a minimum, plaintiffs argue that § 8 is ambiguous.

Plaintiffs' argument is creative but ultimately fails. First, it ignores that § 8(a) provides only that pre 8/1/06 retirees shall <u>be eligible</u> for company paid premiums for <u>up to</u> ten years (emphasis added). Because "shall be eligible" is a somewhat weasily phrase and "up to" could mean many things, this language does not appear to assure plaintiffs of anything. Second, as discussed the Seventh Circuit requires that the intention to vest be expressed in clear and unambiguous language. As we have sen, the language on which plaintiffs base their vesting argument is anything but clear. In fact, § 8 contains no language stating or even suggesting that the benefits of pre 8/1/06 retirees vest. Plaintiffs'

5

argument is based entirely on drawing an inference from the fact that under § 8(e) certain benefits not relevant to plaintiffs' claim do not vest.

Thus, I conclude that § 8 of the CBA neither provides that the benefits of pre 8/1/06 retirees vest nor is ambiguous on the issue. Even assuming that § 8 is ambiguous on the vesting issue, the phrase "during the term of this agreement" in § 6(a) is so clear and unequivocal that it disambiguates any such ambiguity and makes it clear that the CBA does not vest the benefits in question. Therefore, once the 2006 CBA expired, plaintiffs' right to receive the benefits provided in it expired. See Pabst Brewing Co. v. Corrao, 161 F.3d 434, 441 (7th Cir. 1998) (interpreting similar reservation of rights provision); Cherry, 441 F.3d at 483 (same).[1]

The foregoing interpretation of the 2006 CBA is bolstered by the summary plan descriptions ("SPDs") describing plaintiffs' coverage. The 2006 CBA states that:

> The complete terms of your Group Insurance Coverage are set forth in master policies/plan descriptions issued by the current carrier(s). In case of any conflict between this summary and such policies and descriptions, the provisions of the policies will control.

---

[1] Plaintiffs contend that § 6(a) cannot be read to limit the benefits at issue to the term of the CBA because similar language is used in § 6(d) in connection with their retirement plan and their retirement benefits are indisputably vested. See 29 U.S.C. § 1051(1). However, this argument fails for two reasons. First, the language of § 6(a) is clear and unambiguous as to its effect on health benefits. See Cherry, 441 F.3d at 484 ("[w]ords that signify a lifetime commitment in a pension plan may not have the same effect in the context of health benefits"). Second, § 6(d) speaks of a retirement plan (emphasis added). Although retirement benefits are vested, Briggs can terminate the retirement plan after the CBA expires so long as it continues to provide plaintiffs with their vested benefits through such means as an annuity contract or a lump sum payment. See 29 U.S.C. § 1341(b)(3)(A).

(Def. App., TAB 8 at 58.) Since 2002, the SPDs authorized Briggs to "modify or amend the Plan . . . at its sole discretion" and "to terminate the Plan at any time." (Ehlers Dec., Ex. A at 75).

Plaintiffs allege that various extrinsic evidence demonstrates that the parties intended to vest the benefits in question for ten years. However, plaintiffs have not shown that the 2006 CBA is ambiguous, and thus I may not review extrinsic evidence to determine the intent of the parties. See Murphy v. Keystone Steel & Wire Co., 61 F.3d 560, 565 (7th Cir. 1995).

Therefore, **IT IS ORDERED** that defendants' motion to dismiss is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 21st day of April, 2011.

/s_____
LYNN ADELMAN
District Judge