# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

MICHAEL MERRILL, GREGORY
WEBER, JEFFREY CARPENTER,
and UNITED STEEL, PAPER AND
FORESTRY, RUBBER, MANUFACTURING,
ENERGY, ALLIED INDUSTRIAL AND
SERVICE WORKERS INTERNATIONAL
UNION, AFL-CIO/CLC,
                  **Plaintiffs,**

          **v.**                                    **Case No. 10C0700**

BRIGGS & STRATTON CORPORATION,
GROUP INSURANCE PLAN OF BRIGGS
& STRATTON CORPORATION, and DOES 1
THROUGH 20,
                  **Defendants.**

---

## DECISION AND ORDER

Plaintiffs Michael Merrill, Gregory Weber and Jeffrey Carpenter, former employees of defendant Briggs & Stratton Corporation ("Briggs"), and plaintiffs' union, brought this putative class action under § 301 of the Labor Management Relations Act and § 502(a) of the Employee Retirement Income Security Act alleging that Briggs violated the parties' collective bargaining agreement ("CBA") by reducing the health benefits of certain employees who retired before August 1, 2006. Plaintiffs also named Briggs's Group Insurance Plan as a defendant. I dismissed the complaint pursuant to defendants' Fed. R. Civ. P. 12(b)(6) motion, and plaintiffs now move for reconsideration pursuant to Fed. R. Civ. P. 59(e). I may grant a motion to reconsider based on newly discovered evidence or to correct a manifest error of law or fact. Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir.

1996). Plaintiffs argue that the language of the CBA with respect to whether Briggs could reduce their health benefits is ambiguous and that I, therefore, erred in granting defendants' Rule 12(b)(6) motion. They assert that at a minimum they are entitled to discovery. Having considered the parties' submissions on plaintiffs' reconsideration motion, I agree.

Generally, an employer may adopt, modify, or terminate a plan providing health benefits at any time. Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995). Of course, an employer may cede this freedom through collective bargaining. UAW v. Rockford Powertrain, Inc., 350 F.3d 698, 702-703 (7th Cir. 2003). Thus, to determine whether Briggs acted lawfully when it reduced plaintiffs' benefits I must analyze the CBA. In doing so, I give the terms of the CBA their ordinary and popular meaning and treat them as they would be understood by a person of average experience and intelligence. Bland v. Fiatallis North America, Inc., 401 F.3d 779, 783 (7th Cir. 2005). I may consider extrinsic evidence with respect to the parties' intent only if the language of the CBA is ambiguous, meaning that it is susceptible to more than one reasonable interpretation and that the ambiguity is not clarified elsewhere in the document. Id. at 784.

In Rossetto v. Pabst Brewing Co., Inc., 217 F.3d 539, 547 (7th Cir. 2000), the Seventh Circuit provided guidance on how to analyze the language of a CBA relating to the vesting of benefits, stating as follows:

> 1. If a collective bargaining agreement is completely silent on the duration of health benefits, the entitlement to them expires with the agreement, as a matter of law (that is, without going beyond the pleadings), unless the plaintiff can show by objective evidence that the agreement is latently ambiguous, that is, that anyone knowledgeable about the real-world context of the agreement would realize that it might not mean what it says. . . .

2. If the agreement makes clear that the entitlement expires with the agreement, as by including such a phrase as 'during the term of this agreement,' then, once again, the plaintiff loses as a matter of law unless he can show a latent ambiguity by means of objective evidence. . . .

3. If there is language in the agreement to suggest a grant of lifetime benefits, and the suggestion is not negated by the agreement read as a whole, the plaintiff is entitled to a trial. Of course, if the agreement expressly grants such benefits, the plaintiff is entitled, not to a trial, but to a judgment in his favor. We are speaking of a case in which merely suggestive language creates a patent ambiguity.

In the present case, in determining the duration of the benefits provided to retirees in the CBA, I must consider two sections of the 2006-2010 CBA. Article XIII, Section 6(a) states that the:

Company will, to the extent provided later in this agreement, pay the premium cost of the Group Life, Health and Accident Insurance Plans covering employees and their dependents as designated in the Plans. The benefits provided for in the existing Group Insurance Plans, as amended by this agreement, will be maintained during the term of this agreement.

(Def.'s App., TAB 8 at 58.) Article XIV, Section 8 states:

**INSURANCES FOR RETIREES**

(a) Employees with a seniority date of 12-31-79 or prior, who retire after 30 years of service, shall be eligible for full Company paid premiums for medical, dental and vision benefits for up to ten (10) years, but not beyond age 65. For any balance of time between the 10 year maximum and age 65, Company contributions will be limited to the extent as provided for active employees.

(b) Employees with a seniority date of 1-1-80 or later, who retire after 30 years of service, shall be eligible for medical coverage only under the lowest cost medical option for up to 5 years, but not beyond age 65, provided they pay the same contribution as active employees.

(c) Employees with more than 10 but less than 30 years of service, who retire by reason of permanent and total disability, are eligible for Company paid medical benefits until age 65.

. . .

3

(e) For employees who retire on or after 8-1-06, coverages offered in (a), (b), and (c) above shall be the same coverage(s) offered active employees and are subject to change if different insurance plans are negotiated for active employees.

(Def.'s App., TAB 8 at 83; Compl. Ex. 1., p. 2.)

The above sections indicate that the present case does not fall within the first category of cases described in Rossetto because the CBA is not silent with respect to the duration of benefits. Both Sections 6(a) and 8 speak to the issue. The question is whether the CBA makes clear that the benefits expire with the agreement (Rossetto's second category) or whether there is language in the agreement suggesting that the benefits at issue have vested (Rossetto's third category). Upon reconsideration, I conclude that the present case falls within Rossetto's third category. Read together, the language of Sections 8(a) and 8(e) suggests that the parties intended plaintiffs' benefits to vest. Sections 8(a), (b) and (c) all provide benefits for periods exceeding the term of the CBA. And, Section 8(e) provides that the benefits of employees who retired after August 1, 2006 (the day the CBA took effect) are subject to changes negotiated for active employees, implying that the benefits of employees who retired before August 1, 2006 are not subject to such changes. If no benefits were vested, there would be no reason for the CBA to say that some benefits were subject to change.

I previously rejected this interpretation for reasons I now believe were erroneous. First, I stated that the intention to vest must be clearly and unambiguously expressed. However, Rossetto provides that a patent ambiguity is sufficient to defeat the presumption against vesting. 217 F.3d at 547; see also Temme v. Bemis Co., 622 F.3d 730, 736 (7th Cir. 2010) (stating that "we have previously rejected the position that 'magic words' or

4

unequivocal contract language must state that lifetime benefits were being created."). All that is required is "clear and express language" providing "some positive indication of ambiguity, something to make you scratch your head." Rossetto, 217 F.3d at 544. Second, I found that the phrase "shall be eligible. . . for up to ten (10) years, but not beyond age 65" did not establish an entitlement to any particular level of benefits. However, Temme indicates that the word "eligible" does not undermine what otherwise would appear to be a commitment to provide benefits. 622 F.3d at 736-37.

I previously determined that Section 6(a) would disambiguate any ambiguity created by Section 8 concerning whether the parties intended plaintiffs' benefits to vest. In reaching this conclusion, I relied on such cases as Cherry v. Auburn Gear, Inc., 441 F.3d 476, 483-484 (7th Cir. 2006), and Pabst Brewing Co. v. Corrao, 161 F.3d 434, 441 (7th Cir. 1998), which interpreted CBAs providing lifetime benefits but also limiting such benefits to the term of the CBA. In Cherry, the court stated:

> [i]t is well established that "lifetime" benefits can be limited to the duration of a contract. We have previously found that where a reservation of rights clause coexists with a guarantee of lifetime benefits, "we must resolve the tension between the lifetime benefits clause, and the plan termination and reservation of rights clauses, by giving meaning to all of them . . . Although the plan in its current iteration entitles retirees to health coverage for the duration of their lives and the lives of their eligible surviving spouses, the terms of the plan -- including the plan's continued existence -- are subject to change at the will of [the employer]. . . ."
>
> [A]t the end of each CBIA, lifetime benefits ceased and Auburn Gear was free to revoke or modify benefits. So long as the CBIA was in effect, benefits remained valid; when the CBIA ceased to be effective, "lifetime benefits" ceased as well.

441 F.3d at 483-484 (citations omitted); see also Bland, 401 F.3d at 786.

Upon reconsideration, I conclude that Section 6(a) does not disambiguate the ambiguity created by Section 8 with respect to whether plaintiffs' benefits vested. As stated, Sections 8(a), 8(b) and 8(c) provide benefits for periods exceeding the term of the CBA. As also stated and more importantly, Section 8(e) provides that certain benefits are subject to change based on future negotiations. As stated, this provision would have no meaning unless some benefits were vested. If no benefits were vested, all would be subject to change. Thus, in the present case the tension between Section 6(a) and Section 8 cannot be resolved in the same manner that such cases as Cherry resolved the tension between lifetime benefits and benefits available only for the duration of the CBA. This is so because the language of Section 8(e) would not be given meaning.

The language and the structure of the CBA in the present case suggests a different possible resolution. Section 8 is entitled "INSURANCES FOR RETIREES" and is one of two sections in the CBA concerning retirees (the Retirement Plan being the other). It is located in the Group Insurance Plan section of the CBA and is the only section that addresses retiree eligibility for benefits. Section 6(a) is located in the "General" section of the CBA, a section that does not mention retirees. Thus a reasonable interpretation of the provisions at issue in the present case would be that Section 8 addresses the duration of retirement benefits whereas Section 6(a) limits the benefits of current employees to the term of the CBA.

For the foregoing reasons, the CBA is ambiguous as to the duration of plaintiffs' benefits. I may, therefore, consider extrinsic evidence bearing on the parties' intent. In their complaint, plaintiffs allege that Briggs managers made various statements during negotiations suggesting an understanding that plaintiffs' benefits were guaranteed, that

6

Briggs paid retiree benefits during a strike (arguably conceding that benefits extended beyond the duration of the CBA), that plaintiffs specifically bargained for Section 8(e) for the purpose of insuring that Briggs could not cut retiree benefits, and that many employees retired early and forfeited pension benefits specifically to lock in their health benefits. For present purposes, I must assume that these allegations are true, and they suggest that the parties intended that the benefits presently at issue would vest.

Finally, I previously considered certain summary descriptions of insurance plans containing reservation of rights clauses suggesting that Briggs could revoke or alter plaintiffs' benefits at will. Although plaintiffs did not contest the authenticity of these descriptions, they did contend that for various reasons they were inapplicable. I am somewhat skeptical of this line of argument, but as a result of this decision plaintiffs will be able to take discovery on the issue. See Bialoszynski v. Milwaukee Forge, 419 F. Supp. 2d 1045, 1054 (E.D. Wis. 2006) (finding insufficient evidence to determine that the reservation of rights clauses in various insurance plan documents were part of the same contract as the CBA applicable to each plaintiff).

Therefore, for the reasons stated,

**IT IS ORDERED** that plaintiffs' motion to reconsider is **GRANTED**.

**IT IS FURTHER ORDERED** that the judgment is **VACATED** and that this case is **REOPENED**.

Dated at Milwaukee, Wisconsin this 24th day of August 2011.

s/_____
LYNN ADELMAN
District Judge