# EXHIBIT 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL MERRILL, et al.,

    Plaintiffs,

v.

BRIGGS & STRATTON Corporation, et al.,

    Defendants.

Case No. 10-C-0700

---

**IMPORTANT NOTICE ABOUT YOUR HEALTH INSURANCE AND/OR BENEFIT PLAN FROM BRIGGS & STRATTON CORPORATION**

---

**You should read this notice carefully if you are:**

1. **a former employee of Briggs & Stratton who was represented by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial And Service Workers International Union, AFL-CIO/CLC ("USW") (or its predecessors) and retired from a Milwaukee area facility operated by Briggs & Stratton AND**

2. **were hired by Briggs & Stratton prior to 1980 and retired from Briggs & Stratton between August 1, 2000 and August 1, 2006, with at least 30 years of service prior to reaching age 65 and had not reached age 65 prior to August 1, 2010 and you received or retained the right to opt in to health insurance benefits under a plan sponsored by Briggs & Stratton after retirement, OR**

3. **retired from Briggs & Stratton by reason of permanent and total disability prior to reaching age 65 and prior to August 1, 2006 with more than 10 but less than 30 years of service and had not reached age 65 prior to August 1, 2010, and you received retained the right to opt in to health insurance benefits under a plan sponsored by Briggs & Stratton after retirement.**

**THIS NOTICE CONCERNS A PROPOSED CLASS ACTION SETTLEMENT.**

**A FEDERAL COURT AUTHORIZED THIS NOTICE.**

**IT IS NOT A SOLICITATION FROM A LAWYER.**

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ................................................................................................................. 3

    1. Why did I get this notice package?
    2. What is the lawsuit about?
    3. Why is this a class action?
    4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT** ................................................................................................. 5

    5. How do I know if I am part of the settlement?
    6. Do I need to do anything to join the case and share in the settlement?
    7. Can I exclude myself from the settlement?

**THE SETTLEMENT BENEFITS — WHAT YOU GET** ............................................................. 6

    8. What does the settlement provide?
    9. How will the settlement be distributed to Class Members?
    10. How will settlement funds be allocated to Class Members?
    11. When will the settlement be approved?
    12. What am I giving up in the settlement?

**THE LAWYERS REPRESENTING YOU** .................................................................................... 9

    13. Do I have a lawyer in this case?
    14. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ..................................................................................... 10

    15. What does it mean to object?
    16. How do I tell the Court that I don't like the settlement?

**THE COURT'S FAIRNESS HEARING** ................................................................................... 11

    17. When and where will the Court decide whether to approve the settlement?
    18. Do I have to go to the fairness hearing?
    19. May I speak at the hearing?

**IF YOU DO NOTHING** ............................................................................................................. 11

    20. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ........................................................................................ 12

    21. Are there more details about the settlement?
    22. How do I get more information?

# BASIC INFORMATION

### 1. Why did I get this notice package?

You received this notice package because:

You were formerly employed by Briggs & Stratton at its Milwaukee area facility and were represented by the USW or its predecessors at the time of your retirement from Briggs & Stratton, and upon your retirement, you received, or were eligible to receive, fully paid medical, dental and vision insurance benefits from Briggs & Stratton based on your special early (Class #1 described below) or disability retirement (Class #2 described below) from Briggs & Stratton prior to August 1, 2006, and your entitlement continued beyond August 1, 2010 when Briggs & Stratton instituted certain changes in health insurance benefits.

You were sent this notice because you have a right to know about a proposed settlement of a class action lawsuit and your options before the Court decides whether to approve the settlement. If the settlement is approved, certain payments will be distributed to Class #1 and Class #2 Members and Class #1 and Class #2 Members will release claims arising from the changes in benefits. Going forward, under the proposed settlement, Briggs & Stratton will continue to provide to Class #1 and Class #2 Members retiree medical, dental and vision benefits with the cost sharing arrangements currently in place, which include caps on Briggs & Stratton's annual cost for providing medical benefits at the levels it announced in 2010: $12,000.00 for individual coverage and $24,000.00 for family coverage.

This package explains the lawsuit, the settlement, your legal rights and the benefits which will continue to be available.

The court in charge of this case is United States District Court for the Eastern District of Wisconsin and the case is known as <u>Merrill v. Briggs & Stratton Corporation, Inc</u>. The persons who sued are called Plaintiffs and the entities they sued are called Defendants. Plaintiffs and Defendants together are called the Parties.

### 2. What is this lawsuit about?

The lawsuit initially arose when Briggs & Stratton announced changes in retiree health insurance effective August 1, 2010. Briggs & Stratton takes the position that it was entitled to make the changes.

In response to Briggs & Stratton's changes in benefits, in 2010 several retirees, together with the USW, filed a class action lawsuit known as <u>Michael Merrill, Gregory Weber, Jeffrey Carpenter on behalf of themselves and all other persons similarly situated, and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC, Plaintiffs v. Briggs & Stratton Corporation; Group Insurance Plan of Briggs & Stratton Corporation</u>, Defendants, Case No. 10-C-0700-LA (ED Wis.). The action was brought on behalf of certain retirees who retired from the company's Milwaukee area facilities before August 1, 2006, claiming that certain changes made to their benefits starting August 1, 2010, including the

3

capping of the annual amount the company contributes to the cost of Class Members' medical coverage, violated collective bargaining agreements under which they had been covered.

On September 17, 2012, Plaintiffs filed an unopposed motion for class certification. On October 9, 2012 the Court granted the unopposed motion for class certification, certifying two classes. Class #1 includes former employees who were hired prior to 1980 and retired before August 1, 2006 with 30 years of service before reaching age 65 within the prior ten years with entitlement to health insurance benefits. Class #2 includes former employees who had retired prior to August 1, 2006 with more than 10 but less than 30 years of service by reason of permanent total disability prior to reaching age 65 with entitlement to health insurance benefits.

The parties engaged in extensive discovery with the production of more than 18,000 pages of evidence and more than 15 depositions of witnesses.

On May 1, 2014, Plaintiffs filed an amended complaint asserting additional claims concerning implemented changes to the medical, dental and vision benefits after 2010.

On September 22, 2014, Plaintiffs and Defendants filed cross motions for summary judgment, Defendants seeking dismissal of the action, and Plaintiffs seeking judgment in their favor. On September 2, 2015, the Court denied both motions for summary judgment and concluded that the case should be scheduled for trial.

After the Court's decision denying both Parties' summary judgment motions, on December 15, 2015 the Parties mediated the case in a private formal mediation session conducted by independent mediator Jeffrey Lewis. After a full day negotiation session and subsequent discussions, the Parties reached the terms of the settlement agreement, which is embodied in the Settlement Agreement executed on April 8, 2016.

### 3. Why is this a class action?

In a class action, one or more persons called Class Representatives sue on behalf of people who have similar claims. All of these people are a Class or Class Members. One court resolves the issues for all Class Members, and all Class Members are bound by the court's decision or settlement. United States District Judge Lynn Adelman is in charge of this class action.

### 4. Why is there a settlement?

Plaintiffs believe that settlement is in the best interest of Class Members because it will provide significant, although partial, compensation for the reduction in benefits they have experienced. The settlement will also secure Defendants' agreement to continue Class Members' current health benefits, until they reach age 65.

If the case is not settled and goes to trial, a court could determine, as Defendants have argued, that Class Members' health benefits are not vested and could be further reduced or even eliminated. The settlement avoids the risk of an unfavorable result, which could mean no recovery for reduced benefits and no protection for the current level of benefits.

In addition the settlement will provide compensation more promptly than continuing with the litigation, which, as currently scheduled, will require a trial on liability followed by discovery and a second trial on damages. There may also be one or more appeals by the unsuccessful party. Continuing this litigation would result considerable delay and expenditure of more resources.

## WHO IS IN THE SETTLEMENT?

**5. How do I know if I am part of the settlement?**

The Court has certified this suit as a class action. Class Members consist of persons who fit the following definitions:

> Class #1: Former employees of Briggs & Stratton who were represented by the United Steelworkers (or its predecessors) and who: (a) were hired by Briggs & Stratton prior to 1980, (b) prior to reaching age 65 retired from a Milwaukee area facility operated by Briggs & Stratton between August 1, 2000 and August 1, 2006, with at least 30 years of service, (c) had not reached age 65 prior to August 1, 2010, (d) received health insurance benefits under one or more plans sponsored by Briggs & Stratton after retirement (or retained the right to opt in to said plans under plan rules as they existed prior to August 1, 2006), and (e) claim under Section 502(a)(1)(B) of ERISA and Section 301 of the LMRA that, under the terms of the governing collective bargaining agreements and plan documents, they are entitled to be provided unalterable post-retirement medical benefits at the same levels and for the same duration as when they retired.

> Class #2: Former employees of Briggs & Stratton who were represented by the United Steelworkers (or its predecessors) and who: (a) prior to reaching age 65 and prior to August 1, 2006 retired from a Milwaukee area facility operated by Briggs & Stratton by reason of permanent and total disability with more than 10 but less than 30 years of service, (b) had not reached age 65 prior to August 1, 2010, (c) received health insurance benefits under one or more plans sponsored by Briggs & Stratton after retirement (or retained the right to opt in to said plans under plan rules as they existed prior to August 1, 2006), and (d) claim under Section 502(a)(1)(B) of ERISA and Section 301 of the LMRA that under the terms of the governing collective bargaining agreements and plan documents, they are entitled to be provided unalterable post-retirement medical benefits at the same levels and for the same duration as when they retired.

**6. Do I need to do anything to join the case and share in the settlement?**

**No.** You do not need to take any action to join the case. If the proposed settlement is approved by the Court, and you are a member of the Class, you will participate in the Plan of Allocation in accordance with its terms and will continue receive health benefits in accordance with the provisions of the Settlement Agreement.

### 7. Can I exclude myself from the settlement?

No, you do not have the option to exclude yourself (or "opt out") of the class. Under the Court's certification, whatever the result of the litigation, it will apply to all within the two certified classes. All Class Members are covered by the same collective bargaining agreements and choices between benefit plans.

If the settlement is approved, you will be bound by any judgments or orders that the Court enters in this case, you will be deemed to have released Briggs & Stratton from any and all claims that were asserted in this case, and you will not be able to sue Briggs & Stratton on those claims. That is because, the Court has ruled, in certifying this case as a class action, quoting from the Federal Rules "that the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the parties opposing the class."

Although you cannot exclude yourself from the case, you can object to the settlement and ask the Court not to approve it. See Questions 15 and 16 below and the answers to those Questions.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

### 8. What does the settlement provide?

The settlement provides a payment by Briggs & Stratton of $3,950,000 which will be distributed according to a Plan of Allocation, described below.

In addition, the settlement provides:

1. Defendants agree that they will make no changes in medical, dental or vision benefits provided to Class Members in 2016 other than the changes that were announced prior to December 15, 2015.

2. Defendants agree that they will provide members of Class #1 who retired prior to August 1, 2006 after 30 years of service but who have exhausted 10 years of company-paid medical benefits but are not yet age 65, the choice of two medical insurance arrangements until they reach age 65: (i) a preferred provider plan and (ii) a high deductible plan.

Both plans will be provided under the same cost sharing arrangement that is in place currently, subject to an annual caps of the company's contribution toward the cost of the selected option of $12,000 for individual coverage and $24,000 for individual and dependent(s) coverage. If the annual limit is reached, Class #1 members will be required to pay the difference between the annual limit and the costs incurred in equal monthly payments.

3. Defendants agree that they will provide members of Class #2 who retired by reason of total and permanent disability after 10 but before 30 years of service and who have not yet attained age 65 the choice between two medical insurance arrangements until they reach age 65: (i) a preferred provider plan and (ii) a high deductible plan.

Both plans will be provided under the same cost sharing arrangement that is currently in place, subject to an annual cap of the company's contribution annually toward the cost of selected option. These two medical insurance arrangements are subject to annual caps of the company's contribution toward the cost of the selected option of $12,000 for individual coverage and $24,000 for individual and dependent(s) coverage. If the annual limit is reached, Class #2 members will be required to pay the difference between the annual limit and the costs incurred in equal monthly payments.

Dental and vision benefits will also be continued for Class #1 and Class #2 Members to age 65 under the same cost sharing arrangements currently in place.

The company will provide disabled retirees who retired prior to October 29, 1983 the choice between a preferred provider plan and a high deductible plan for their lifetimes. However, the company may offer this group additional medical insurance alternatives at any time.

### 9. How will the settlement funds be distributed to Class Members?

Settlement funds will be distributed to Class Members according to a Plan of Allocation which is being filed with the court and is described below.

### 10. How will settlement funds be allocated to Class Members?

According to the Plan of Allocation which is proposed, the Settlement Administrator, KCC, LLC will distribute the Settlement Fund as follows:

a. The total payment by Defendants is $3,950,000.

b. From that amount, litigation costs and expenses will be deducted. These costs totaled $126,465.23 as of April 7, 2016. Class Counsel now seek reimbursement of their litigation costs and expenses.

c. The costs of a Settlement Administrator and settlement administrative costs, including taxes and tax-related expenses will also be deducted. These include costs of any searches for missing Class Members; costs of analyzing the individual out of pocket claims data through July 2016 for purposes of calculating individual participant distribution; costs of distribution of settlement checks; costs of tax work to be performed. The cost of the Settlement Administrator and settlement administration is estimated not to be above $38,000.

d. Attorneys' fees will also be deducted from the settlement payment. The lodestar calculation of Plaintiffs' attorney fees (reasonable number of hours multiplied by reasonable hourly rate prior to December 15, 2015 was of $1,372,114.50. Plaintiffs' Counsel, have agreed to petition the Court for 1/2 of lodestar calculation of value their services up to the date of mediation, that

is $686,057.25. Class Counsel have spent additional professional time since December 14, 2015 with a lodestar value of $104,063.50, but are not seeking additional fees.

e. The remaining funds estimated at $3,099,477.52 the "Net Settlement Fund" will reimburse individual Class Members for the out of pocket and 2010 premium expenses they incurred as documented in the data provided by Defendants pursuant to the following formula:

> (i) $73,750 will be divided among the 32 participants who paid premiums in 2010 in accordance with their respective shares of the premiums. $73,750 represents ½ the amount these participants together paid to retain their coverage.
>
> (ii) 5% of the Net Settlement Fund (minus the $73,750 described in (i)), approximately $151,286.37 shall be divided among the members of Class #2 who are alive as of July 31, 2016, and are still participants in the Briggs retiree medical plan based on the number of months after July 31, 2016 that they could remain covered by Briggs' medical plan until they reach age 65.
>
> (iii) 10 % of the Net Settlement Fund (minus the $73,750 described in (i)) approximately $302,572.75 shall be distributed equally among Class #1 and Class #2 Members based on the number of months he/she was in the Class after July 31, 2010 and before August 1, 2016 and therefore was subject to the reductions in vision, dental and hearing aid benefits.
>
> (iv) The remainder of the Net Settlement, approximately $2,571,868.40 will be distributed so that each individual Class #1 and Class #2 Member's portion is based on a calculation the ratio of his or her out of pocket costs for medical services under the Briggs Medical Plan for himself or herself and his or her dependents from January 1, 2011 to July 31, 2016 to the total out of pocket costs for all Class #1 and Class #2 Members over that time frame.

**11. When will the settlement be approved?**

The Court will hold a hearing at [time] on [date] to decide whether to approve the settlement. It may take the Court several weeks after the hearing before it decides. If the Court approves the settlement, there may be appeals. If appeals are filed, it is uncertain how long it will take to resolve them. Please be patient.

**12. What am I giving up in the settlement?**

Under this settlement, Class #1 and Class # 2 Members will give up or "release" the right to sue Briggs & Stratton or its group insurance plan their agents, officers or employees over any claim of entitlement to post-retirement healthcare benefits except for those provided by the settlement. This includes any claims about the same events and subject matter involved in *this* case, including whether Briggs & Stratton's reduction in of retiree health benefits in 2010 and thereafter through the present violated any collective bargaining agreement or ERISA, and any similar claims under state or federal law.

As explained in the Settlement Agreement, "Released Claims" means all claims, "whether known

or unknown" "that are, were or could have been alleged, asserted, or set forth in the Complaint or the Action, or that are related in any way to any of the allegations or claims asserted in the Complaint or the Action, including but not limited to claims that Defendants violated collective bargaining agreements, the Plan, any other agreements, the LMRA, ERISA, or any other law in connection with the modification of medical benefits the Company has provided or continues to provide to the Class Members arising on or before January 1, 2016." A full description of the Release provisions of the Settlement are at Section 5 of the Stipulation of Settlement, a copy of which is available upon request to Class Counsel, whose contact information is described in response to Question 22 below.

This means that even if you discover facts in the future that were not known at the time of the settlement which you think demonstrate further violations related to this case, you may not sue Briggs & Stratton. Even if new information is discovered, the settlement will be binding.

## THE LAWYERS REPRESENTING YOU

### 13. Do I have a lawyer in this case?

The Court has appointed the following lawyers to represent the Class:

William Payne
Feinstein Doyle Payne & Kravec, LLC
429 Forbes Avenue Allegheny Building, 17th Floor
Pittsburgh, PA 15219

Marianne Goldstein Robbins
The Previant Law Firm, S.C.
310 W. Wisconsin Avenue, Suite 100 MW
Milwaukee, WI 53203

These lawyers are called Class Counsel. You will not be charged fees or expenses by these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 14. How will the lawyers be paid?

Under the proposed settlement, Class Counsel will file a petition for attorneys' fees and expenses before the objections deadline.

Briggs & Stratton will not oppose Class Counsel's application for attorneys' fees so long as Class Counsel seeks no more than one third the settlement amount. Class Counsel have agreed to petition for fees at a figure below 18% of the settlement amount.

In addition to attorneys' fees there are out of pocket expenses for filing the action, deposition transcripts, expert fees, travel expenses, etc. As set forth above, as of April 7, 2016, expenses were $126,465.23.

In addition to objecting to the proposed settlement, any Class Member may also advise the Court about any objections he or she has to the adequacy of representation by Class Counsel or to Class Counsel's motion for attorneys' fees and expenses.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the settlement or some part of it, including the adequacy of the representation of the Class by the named plaintiffs and Class Counsel; the fairness of the settlement; and/or the fees and expenses sought by Class Counsel.

### 15. What does it mean to object?

Objecting is simply telling the Court that you do not like something about the settlement. It will not have any bearing on your right to receive benefits under the settlement if the settlement is approved.

### 16. How do I tell the Court that I don't like the settlement?

You can object to the settlement if you dislike any part of it. You also can object to Class Counsel's application for fees and expenses. You can give reasons why you think the Court should not approve the settlement or Class Counsel's application. To object, you must send a letter or other written statement stating that you object to the settlement in Merrill v. Briggs & Stratton, 10-CV-0700. Be sure to include your name, address, telephone number, your signature, and a full explanation of all the reasons you object to the settlement or to Class Counsel's application for fees and costs (and, if applicable, the name, address and telephone number of your attorney). Your written objection must be filed with the Court, and mailed to the counsel listed below, postmarked no later than [date] at the following addresses:

*Clerk of Court:*

Jon W. Sanfilippo, Clerk of Court
United States District Court
Eastern District of Wisconsin
517 East Wisconsin Avenue
Milwaukee, WI 53202

*Counsel for Plaintiffs:*

Marianne Goldstein Robbins
The Previant Law Firm, S.C.
310 West Wisconsin Ave.
Suite 100MW
Milwaukee, WI 53203
*Counsel for Defendants:*

Christopher A. Weals
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004

Be sure to include "Merrill v. Briggs & Stratton, 10-CV-0700" on the first page of all documents.

**THE COURT'S FAIRNESS HEARING**

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you are not required to.

**17. When and where will the Court decide whether to approve the settlement?**

The Court will hold a Fairness Hearing at [time] on [date] at the U.S. Courthouse, 517 East Wisconsin Avenue, Milwaukee, WI 53202. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Judge will determine whether and to what extent parties will be permitted to address the Court at the hearing. The Court will also decide the amount of Class Counsel's fees and expenses. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

**18. Do I have to go to the fairness hearing?**

No, Class Counsel will answer questions the Court may have. You are however, welcome to come at your own expense. If you send an objection, you do not have to go to Court to talk about it. As long as your objection is postmarked by [date], the Court will consider it. You also have the right to retain a lawyer at your own expense to represent you at the fairness hearing, but it is not necessary to do so.

**19. May I speak at the hearing?**

If you are a Class Member and have submitted an objection to the settlement as described in the response to question 14, you may ask the Court for permission to speak — with or without an attorney — at the Fairness Hearing.

**IF YOU DO NOTHING**

**20. What happens if I do nothing at all?**

The settlement does not require you to do anything and there is no penalty for doing nothing at all. If the Court approves the settlement, you will be bound by it, regardless of whether you filed an objection.

11

# GETTING MORE INFORMATION

### 21. Are there more details about the settlement?

This Notice summarizes the proposed settlement. More details are set forth in the parties' Settlement Agreement.  To obtain the Settlement Agreement, or for more information regarding the settlement, including Class Counsel's fee application once it is filed, you may contact Class Counsel to request a copy.  The address, phone number, and email addresses are:

Marianne Goldstein Robbins
Nathan D. Eisenberg
THE PREVIANT LAW FIRM, S.C.
310 W. Wisconsin Ave., Suite 100 MW
T.: (414) 223-0433
F.: (414) 271-6308
Email:  mgr@previant.com
        nde@previant.com

You can also inspect any of the documents filed in this case, free of charge, by visiting the Clerk of Court, U.S. Courthouse, 517 East Wisconsin Avenue, Milwaukee, WI  53202, during regular business hours. You can purchase copies of those documents from the Clerk of Court.

### 22. How do I get more information?

You can also call Class Counsel at (414) 223-0433 or write them at the Previant Law Firm's address above to get more information about the settlement or to help you determine whether you are a Class Member.  PLEASE DO NOT CONTACT THE COURT.  Court personnel cannot or are not authorized to answer your questions.

| | |
|---|---|
| Marianne Goldstein Robbins | Ellen M. Doyle |
| Nathan D. Eisenberg | Joel R. Hurt |
| The Previant Law Firm, S.C. | Feinstein Doyle Payne & Kravec, LLC |
| 310 W. Wisconsin Ave., Suite 100MW | 429 Forbes Avenue |
| Milwaukee, WI  53203 | Pittsburgh, PA  15219 |
| T.: (414) 223-0433 | T.: (412) 281-8400 |
| F.: (414) 271-6308 | F.: (412) 281-1007 |
| Email: mgr@previant.com | Email: edoyle@fdpklaw.com |
|     nde@previant.com |     jhurt@fdpklaw.com |