# EXHIBIT 5

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MICHAEL MERRILL, GREGORY WEBER, JEFFREY CARPENTER on behalf of themselves and all other persons similarly situated; and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC,<br><br>    Plaintiffs,<br> v.<br><br>BRIGGS & STRATTON CORPORATION; GROUP INSURANCE PLAN OF BRIGGS & STRATTON CORPORATION, and DOES 1 THROUGH 20,<br><br>    Defendants. | Case No. 10-C-0700-LA |

## [PROPOSED] FINAL ORDER APPROVING CLASS SETTLEMENT

Plaintiffs Michael Merrill, Gregory Weber, and Jeffrey Carpenter, on behalf of the Classes certified by this Court by Order dated October 9, 2012, and Plaintiff the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("Union"), and Defendants Briggs & Stratton Corporation and the Group Insurance Plan of Briggs & Stratton Corporation (hereinafter "Briggs") entered into a proposed Settlement embodied in a stipulation of settlement ("Settlement Agreement").[1]  On _____, 2016, the Court preliminarily approved the Settlement and ordered that notice be sent to all Class Members.  A fairness hearing was held on _____, 2016.

Now before the Court is Plaintiffs' motion for final approval of the Settlement.  The

---
[1] All terms herein shall have the same meaning as used in the Settlement Agreement.

Court having reviewed and considered the Settlement Agreement, the Plan of Allocation, and Class Counsel's Petition for Attorneys' Fees, as well as the motions and other submissions of the parties, **IT IS HEREBY ORDERED AND ADJUDGED:**

1. On October 9, 2012, the Court granted the Unopposed Motion for Class Certification, certifying the following two classes:

    a. Class 1: Former employees of the Company who were represented by the USW (or its predecessors) and who: (i) were hired by the Company prior to 1980; (ii) prior to reaching age 65 retired from a Milwaukee area facility operated by the Company between August 1, 2000 and August 1, 2006, with at least 30 years of service; (iii) had not reached age 65 prior to August 1, 2010; (iv) received health insurance benefits under one or more plans sponsored by the Company after retirement (or retained the right to opt in to said plans under plan rules as they existed prior to August 1, 2006); and (v) claim under Section 502(a)(1)(B) of ERISA and Section 301 of the LMRA that, under the terms of the governing collective bargaining agreements and plan documents, they are entitled to be provided unalterable post-retirement medical benefits at the same levels and for the same duration as when they retired ("Class No. 1").

    b. Class 2: Former employees of the Company who were represented by the USW (or its predecessors) and who: (i) prior to reaching age 65 and prior to August 1, 2006 retired from a Milwaukee area facility operated by the Company by reason of permanent and total disability with more than 10 but less than 30 years of service; (ii) had not reached age 65 prior to August 1, 2010; (iii) received health insurance benefits under one or more plans sponsored by the Company after retirement (or retained the right to opt in to said plans under plan rules as they existed prior to August 1, 2006); and (iv) claim under Section 502(a)(1)(B) of ERISA and Section 301 of the LMRA that under the terms of the governing collective bargaining agreements and plan documents, they are entitled to be provided unalterable post-retirement medical benefits at the same levels and for the same duration as when they retired ("Class No. 2").

This Court now finally approves the certification of the two Classes and the Settlement for them as more fully set forth below.

2. Under Federal Rule of Civil Procedure 23(e)(2), a court may approve a settlement in class action litigation only if it finds that the settlement is "fair, reasonable and adequate." In order to evaluate the fairness of a settlement, the court must consider "(1) the strength of the case

2

for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." Wong v. Accretive Health, Inc., 773 F.3d 859, 863 (7th Cir. 2014).

3. The first factor – the strength of the plaintiffs' case compared to the value of the settlement – is the most important. Id. at 863-64. While the parties remained convinced of their respective positions, they also recognized the inherent risks of continuing to advance those positions in litigation. This Court denied both parties' cross-motions for summary judgment, finding the collective bargaining agreements (CBAs) ambiguous and writing that "[s]orting through these types of factual disputes is a job for the fact finder, precluding summary judgment. Thus, plaintiffs are entitled to a trial on the question of whether or not their benefits vested under the CBAs." 2015 WL 5172943 at *9. This Court also held for trial "the issue of whether the 2010 and subsequent changes are reasonably commensurate with the pre-2006 benefits." Id. at *10. This Court also denied the parties' cross motions to strike their respective experts, writing, that "[w]hether the benchmarks and assumptions the experts used in their analyses are reliable is a jury question." Id. at *5. Under these circumstances it was reasonable for Plaintiffs to settle for approximately 1/2 of the monetary relief requested through litigation because all merits issues were reserved for trial. This Court bifurcated the trial between merits and damages by order dated June 10, 2014 (Doc. #105). In ERISA/LMRA actions, there is no possibility for punitive or exemplary damages.

4. The Settlement also provides for the continuation of benefits to retirees as set forth in Section 10 of the Settlement Agreement.

3

a. More specifically, Defendants have agreed that, in the year 2016, they will make no changes to the medical, dental, or vision benefits provided to Class members other than changes that were announced prior to December 15, 2015.

b. Defendants have agreed that they will provide to members of Class No. 1 who have not attained age 65 but have already exhausted ten (10) years of Company-paid medical benefits since their dates of retirement, a choice of two medical insurance arrangements until those retirees reach age 65: (i) a preferred provider plan and (ii) a high-deductible plan. Both plans will be provided to these Class No. 1 members under the same cost-sharing arrangements that are in place as of January 1, 2016, copies of which are attached as Exhibit A (2016 Benefits at a Glance) and Exhibit B (2016 premium cost sharing) to this Order, subject to an annual cap to the Company's contribution toward the cost of the selected option of these two medical insurance arrangements of $12,000 for single coverage and $24,000 for family coverage (coverage that is not single). As a result, if these annual limits are reached, these Class No. 1 members will be required to pay the difference between the annual limits and the costs incurred in equal monthly installments over a twelve month period. Defendants further agreed to provide to these Class No. 1 members dental and vision benefits under the same cost-sharing arrangement that is in place as of January 1, 2016.

c. Defendants have further agreed that they will provide to members of Class No. 2 who have not attained age 65 the choice of two medical insurance arrangements until those retirees reach age 65: (i) a preferred provider plan and (ii) a high-deductible plan. Both plans will be provided to these Class No. 2 members under

4

the same cost-sharing arrangements that are in place as of January 1, 2016, copies of which are attached as Exhibit A (2016 Benefits at a Glance) to this Order, subject to an annual cap to the Company's contribution toward the cost of the selected option of these two medical insurance arrangements of $12,000 for single coverage and $24,000 for family coverage (coverage that is not single). As a result, if these annual limits are reached, these Class No. 2 members will be required to pay the difference between the annual limits and the costs incurred, in equal monthly installments over a twelve month period. Defendants further agree to provide to these Class No. 2 members dental and vision plans under the same cost-sharing arrangement that is in place as of January 1, 2016.

d. For those former employees who retired prior to October 29, 1983, who were represented by the USW predecessors, and who retired from a Milwaukee area facility operated by the Company prior to October 29, 1983 by reason of permanent and total disability with more than 10 years of service and received health insurance benefits under one or more plans sponsored by the Company after retirement (or retained the right to opt in to said plans), Defendants will continue to provide the above two medical insurance arrangements as provided in Paragraph 10.3 of the Settlement Agreement, for the lifetimes of those retirees rather than to age 65, under the same cost-sharing arrangement that is in place as of January 1, 2016, but nothing in this Paragraph shall preclude the Company from offering this limited group of retirees additional medical insurance alternatives at any time.

5. This Court finds that the relief attained for the Class under the Settlement is well

5

Case 2:10-cv-00700-LA   Filed 04/12/16   Page 6 of 14   Document 185-5

within the range of reasonableness in light of the risks of continuing litigation through the bifurcated trial and on appeal. It provides both for past monetary compensation and for some continuation of benefits for the future.

6. This Court is well aware of the likely complexity, length, and expense of continued litigation. The parties have devoted substantial resources to this litigation already. At the time they settled, with the assistance of an experienced mediator, they had fully briefed the merits in their cross motions for summary judgment. They had retained experts and were facing two bifurcated trials with the likelihood of appeals. Consideration of the status of the litigation mitigates in favor of approval of the settlement, particularly where, as here, many of the Class members were elderly, retired and/or disabled.

7. There was ___ opposition to the Settlement. Of approximately 1,049 class members, ___ objected.

8. The parties were well-represented by highly experienced counsel with class and complex litigation experience and specific experience related to collectively bargained retiree health benefits claims. Counsel have represented to this Court that they recommend the fairness of the settlement. Consideration of this factor weighs in support of the fairness of the Settlement.

9. Finally, this Court further recognizes that the stage of the proceedings, i.e., completion of merits discovery, and this Court's denial of the parties' cross-motions for summary judgment, also supports the fairness of the Settlement. The parties had grappled with each other's merits arguments in the summary judgment briefing. They had completed merits fact and expert discovery. The parties were well-poised to assess the value of the claims and

defenses. They retained a highly qualified ERISA lawyer as their private mediator to assist them in negotiating the Settlement.

10. Accordingly, the Court hereby approves and confirms the Settlement embodied in the Settlement Agreement as constituting a fair, reasonable, and adequate settlement and compromise of this action in accordance with applicable law, including Fed. R. Civ. P. 23, and orders that the Settlement Agreement shall be effective, binding, and enforced according to its terms and conditions.

11. Notice, in the form previously approved by the Court, was sent to the last known addresses of all members of the Class and reasonable efforts were made to re-send notices to those Class members whose notices were returned as undeliverable. The Notice constitutes the best notice practicable under the circumstances and fully complies with and satisfies the notice requirements of Federal Rule of Civil Procedure 23, due process, the United States Constitution, and applicable law. The Court determines that the Notice reasonably apprised the Class members of the nature and pendency of this lawsuit and the claims made herein; the class definitions; the material elements of the proposed settlement, the binding effect of the settlement; class members' right to object to the proposed settlement, along with information regarding the time and manner for doing so; the date, time, and location of the final fairness hearing; the Class members' right to appear at the fairness hearing (including through an attorney) and speak regarding the proposed settlement; and the identity of Plaintiffs' counsel and how to contact them with any questions. Full opportunity has been afforded to Class members to be heard and to participate in the fairness hearing.

12. Pursuant to the Settlement Agreement, the total payment by Defendants is $3,950,000.00 (hereinafter "Settlement Fund"). Plaintiffs propose first that the Settlement

Administrator deduct from the total Settlement Fund the expenses of litigation and administration as follows:

    a.      The total payment by Defendants is $3,950,000.00.

    b.      From that amount, litigation costs and expenses will be deducted. These costs totaled $126,465.23 as of April 7, 2016. Plaintiffs' counsel now seek reimbursement of their litigation costs and expenses.

    c.      The costs of a Settlement Administrator and settlement administrative costs including taxes and tax-related expenses, will also be deducted. These include costs of any searches for missing Class members; costs of analyzing the individual out-of-pocket claims data through July 2016 for purposes of calculating individual participant distribution; costs of distribution of settlement checks; and costs of tax work to be performed. The cost of the Settlement Administrator, settlement administration, and taxes and related expenses is estimated not to be above $38,000.

    d.      Attorneys' fees will also be deducted from the settlement payment. The lodestar calculation of Plaintiffs' attorney fees (reasonable number of hours multiplied by reasonable hourly rate) prior to December 15, 2015 was $1,372,114.50. Plaintiffs' counsel have agreed to petition the Court for 1/2 of lodestar calculation of the value of their services up to the date of mediation, that is $686,057.25. Plaintiffs' counsel have spent additional professional time since December 14, 2015, with a total lodestar value of $104,063.50, but are not seeking additional fees.

    e.      The remaining funds estimated at $3,099,477.52, the "Net Settlement Fund," will reimburse individual Class members for the out-of-pocket and 2010 premium expenses they incurred as documented in the data provided by Defendants pursuant to the following formula:

        (i) $73,750 will be divided among the 32 participants who paid premiums in 2010 in accordance with their respective shares of the premiums. $73,750 represents 1/2 the amount these participants together paid to retain their coverage.

        (ii) 5% of the Net Settlement Fund (minus the $73,750 described in (i)), approximately $151,286.37, shall be divided among the members of Class #2 who are alive as of July 31, 2016, and are still participants in the Briggs retiree medical plan based on the number of months after July 31, 2016 that they could remain covered by Briggs' medical plan until they reach age 65.

        (iii) 10% of the Net Settlement Fund (minus the $73,750 described in (i)) approximately $302,572.75, shall be distributed equally among Class

8

members based on the number of months he/she was in the Class after July 31, 2010 and before August 1, 2016 and therefore was subject to the reductions in vision, dental and hearing aid benefits.

(iv) The remainder of the Net Settlement, approximately $2,571,868.40, will be distributed so that each individual Class member's portion is based on a calculation of the ratio of his or her out-of-pocket costs for medical services under the Briggs Medical Plan for himself or herself and his or her dependents from January 1, 2011 to July 31, 2016 to the total out-of-pocket costs for all Class #1 and Class #2 members over that time frame.

The Court hereby approves the Plan of Allocation as fair and reasonable.

13. The parties have complied with the requirements of the Class Action Fairness Act.

14. Under this Final Approval Order and after payment by Defendants of the Settlement Amount as defined in paragraph 6.1 of the Settlement Agreement, and expiration of the time for termination of the Settlement Agreement under paragraph 11.1 of the Settlement, Plaintiffs and all Class Members irrevocably, absolutely, unconditionally, fully, finally, and forever release, acquit, and discharge the Defendant Released Parties from Released Claims (as defined in Paragraph 5.2 of the Settlement) that such persons or entities directly, indirectly, derivatively, or in any other capacity ever had or have based upon, related to, arising out of or in connection with the claims and allegations asserted in the Complaint. This Release shall not release any claims relating to the covenants or obligations set forth in this Settlement Agreement; shall not include any individual claims for benefits arising in the ordinary course under the relevant plan documents or ERISA; and shall not purport to release claims for or related to persons who are not Plaintiffs or Class Members. Without limiting the foregoing, upon Final Settlement Approval, Plaintiffs and all Class Members shall be deemed to have irrevocably, absolutely, and unconditionally waived any and all rights to (i) receive with regard to the Released Claims any consideration in excess of that portion of the Net Settlement Amount that

9

Case 2:10-cv-00700-LA   Filed 04/12/16   Page 10 of 14   Document 185-5

shall be allocated and payable to or for the benefit of such Class members in accordance with the terms and provisions of the Plan of Allocation; (ii) seek relief against the Defendant Released Parties in the Action or with respect to claims that were asserted or could have been asserted in the Action beyond that provided in this Settlement Agreement; and (iii) file any such claims in any court or adjudicatory forum.

15. Subject to Paragraph 5.1 of the Settlement Agreement, the "Released Claims" shall be any and all claims, demands, rights or causes of action of any and every kind, character or nature whatsoever (including, but not limited to, claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement of fees, litigation costs, injunction, declaration, contribution, indemnification, or any other type or nature of legal or equitable relief whether accrued or not, whether known or unknown in law or equity brought by way of demand, complaint, cross-claim, counterclaim, third-party claim or otherwise, arising out of any or all of the acts, omissions, facts, matters, transactions or occurrences that are, were or could have been alleged, asserted, or set forth in the Complaint or the Action, or that are related in any way to any of the allegations or claims asserted in the Complaint or the Action, including but not limited to claims that Defendants violated collective bargaining agreements, the Plan, any other agreements, the LMRA, ERISA, or any other law in connection with the modification of medical benefits the Company has provided or continues to provide to the Class members arising on or before January 1, 2016. Released Claims shall not include any claims relating to the covenants or obligations set forth in this Settlement Agreement; shall not include any individual claims for benefits arising in the ordinary course under the relevant plan documents or ERISA; and shall not purport to release claims for or related to persons who are not Plaintiffs or Class Members.

16. Under the Settlement, the Parties stipulate and agree that, upon Final Settlement

10

Approval (as defined in the Settlement Agreement), Plaintiffs expressly waive and relinquish, to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by: (i) California Civil Code § 1542, which provides that a "general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor," or (ii) any similar state, federal, or other law, rule or regulation or principle of common law of any domestic or foreign governmental entity. Plaintiffs may hereafter discover facts other than or different from those that they know or believe to be true with respect to the subject matter of the Released Claims with respect to any Released Parties, but Plaintiffs hereby expressly waive and fully, finally and forever settle and release any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the Released Claims, without regard to the subsequent discovery or existence of such other or different facts.

17. Upon Final Settlement Approval, Defendants absolutely and unconditionally release and forever discharge the Plaintiff Released Parties from any and all claims relating to the institution or prosecution of the Action or the settlement of any Released Claims, except that this release shall not include any claims relating to the covenants or obligations set forth in this Settlement Agreement.

18. The Court specifically approves the following payments from the Settlement Fund:

>   a. The reimbursement to Class Counsel of their litigation expenses and costs in the amount of $_____; and
>
>   b. Payment of settlement administration expenses, as provided in Paragraph 7.3 of the Settlement Agreement, in the amount of $38,000.000.

11

19. Class Counsel have filed a petition for an award of attorneys' fees to them in the amount of $686,057.25. As part of the Settlement, Defendants agreed not to dispute the award of attorneys' fees in that amount. This Court has considered the requested fees both in light of the value of the relief obtained for the Class and in light of the lodestar of Class Counsel in obtaining such relief. This Court finds that Class Counsel have achieved more than some degree of success on the merits, as that phrase is described in Hardt v. Reliance Standard Life Insurance Co., 560 U.S. 242, 245 (2010). They have obtained a substantial monetary award combined with continued benefits for the future. The requested fee amount of $686,057.25 constitutes __% of the Settlement Fund, and is consistent with fees awarded as a percentage of the fund in other matters by the Seventh Circuit including in Florin v. Nationsbank of Georgia, N.A., 34 F.3d 560, 562 (7th Cir. 1994) (18.45% of the fund); Williams v. Rohm and Haas Pension Plan, 658 F.3d 629, 633 (7th Cir. 2011) (24.17% of the fund), and Silverman v. Motorola Solutions, Inc., 739 F.3d 956, 958 (7th Cir. 2013) (27.5% of the settlement fund). A fee of __% of the Settlement Fund is fair and reasonable. Class Counsel provided fee records information to the Court that show that their requested fees are for less than __% of the lodestar value of their professional time. This lodestar check further supports the requested award of $686,057.25.

20. This Court retains exclusive jurisdiction to resolve any disputes relating to or arising out of or in connection with the enforcement, interpretation or implementation of the Settlement.

21. The Court hereby dismisses the Complaint and the Action against Defendants with prejudice on the merits.

Dated: _____, 2016

_____
Lynn Adelman
United States District Judge

13

Case 2:10-cv-00700-LA   Filed 04/12/16   Page 14 of 14   Document 185-5